United States District Court
Southern District of Texas

**ENTERED**

February 24, 2020

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| JAIME GARCIA, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL NO. 2:18-CV-29 |
| | § | |
| LONE STAR WRECKER SERVICE, | § | |
| LLC, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

The Court is in receipt of the Joint Motion to Seal Settlement Agreement, Dkt. No. 21; the Joint Motion for Approval of Settlement Agreement and Dismissal with Prejudice, Dkt. No. 24; and the Settlement Agreement, Dkt. No. 25. For the reasons below, the Court **DENIES** the Joint Motion to Seal Settlement Agreement, Dkt. No. 21, and **GRANTS** the Joint Motion for Approval of Settlement Agreement and Dismissal with Prejudice, Dkt. No. 24.

### I.    Background

On January 31, 2018, Plaintiffs Jaime Garcia ("Garcia") and Monet Gilmore ("Gilmore") filed suit to recover overtime wages and damages under the Fair Labor Standards Act ("FLSA") against Defendants Lone Star Wrecker Service, LLC ("Lone Star") and Eric J. Cantu. Dkt. No. 1. Plaintiffs argue that Defendants unlawfully withheld overtime wages when they worked at Lone Star, which provides general towing and off-road services in the Corpus Christi, Texas region. *Id*. at 4.

The parties reached an agreement to settle this lawsuit on December 14, 2018. Dkt. No. 19. The parties have filed their Joint Motion to Seal Settlement Agreement, Dkt. No. 21; the Joint Motion for Approval of Settlement Agreement and Dismissal with Prejudice, Dkt. No. 24; and the Settlement Agreement, Dkt. No. 25. The Court now considers the pending motions.

## II.  Settlement Terms

The parties reached a settlement based on a payment to Plaintiffs reflecting a compromise but not an admission of liability. Dkt. No. 25 at 4. Under the settlement agreement, Defendants will pay a total sum of $7,000.00—$1,000.00 to Garcia; $4,000.00 to Gilmore; and $2,000.00 in attorney's fees, costs, and expenses. *Id*. at 5–6. Each Plaintiff will receive their respective share of the settlement as follows: (1) one half as back wages, from which taxes will be withheld and for which a W-2 will be issued; and (2) one half as liquidated damages, for which a Form 1099 will be issued. *Id*. at 5. In exchange for the payments set forth in the settlement agreement, Plaintiffs will waive, release, and discharge Defendants from any and all claims for unpaid overtime wages, underpaid wages, unpaid wages, liquidated or other damages, penalties, restitution, attorney's fees, costs, and interest, including but not limited to, claims under the FLSA, or any other federal, state, or local law pertaining to the payment of wages or their employment during the period as defined in the settlement agreement. *See id*. at 1–3.

## III.  Motion for Approval of Settlement Agreement

### a.  Legal Standard

Courts may approve FLSA settlement agreements only if they reflect "a fair and reasonable compromise of a bona fide dispute under the FLSA." *Beardslee v. Randalls Food & Drugs LP*, No. H-09-1200, 2009 WL 1957714, at *1 (S.D. Tex. July 7, 2009). When scrutinizing an FLSA settlement agreement, courts first look to the existence of a bona fide dispute. *Villeda v. Landry's Restaurant, Inc.*, No. H-08-2287, 2009 WL 3233405, at *1 (S.D. Tex. Oct. 7, 2009). A bona fide dispute as to liability exists where the evidence in the record is inconclusive as to the hours worked or the amount of compensation owed. *Sandlin v. Grand Isle Shipyard, Inc.*, No. 17-10083, 2018 WL 2065595, at *6 (E.D. La. May 3, 2018). For example, parties may point to conflicting evidence in the record as to the hours worked or wages owed[1] or evidence

---

[1] *See Martinez v. Bohls Bearing Equipment Co.*, 361 F. Supp. 2d 608, 631 (W.D. Tex. 2005) (finding bona fide dispute where plaintiff maintained in his statement that he was owed over $3,000 in

demonstrating that it is impossible to determine those amounts.[2] Submission of the settlement agreement containing conclusory language stating the release of claims in exchange for a certain amount, without more, is insufficient to prove a bona fide dispute.[3]

Courts then look to whether the proposed settlement is a fair and reasonable compromise over the issues. "If the settlement reflects 'a reasonable compromise over the issues,' the court may approve it." *Villeda*, 2009 WL 3233405, at *1. (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)); *see also Jarrard v. Se. Shipbuilding Corp.*, 163 F.2d 960 (5th Cir. 1947). "The standard for whether a class action settlement should be approved is whether the settlement is 'fair, adequate and reasonable' and has been entered into without collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Lynn's Food Stores*, 679 F.2d at 1355.

"Although the class-action provisions of Federal Rule of Civil Procedure 23 technically do not apply to collective actions under the FLSA, Rule 23(e) is similar because it requires a court approval to finalize a proposed class action settlement." *Sims v. Hous. Auth. City of El Paso*, No. EP-10-CV-109, 2012 WL 10862119, at *3 (W.D. Tex. Feb. 29, 2012). "Thus, the Rule 23(e) standard encompasses the 'fair and reasonable' settlement standard of the FLSA collective action, and cases interpreting Rule 23(e) are analogous and applicable to the instant FLSA action." *Id.* at 2. (quoting *Altier v. Worley Catastrophe Resp., LLC*, Nos. 11-241, 11-242, 2012 WL 161824, at *14 (E.D. La. Jan. 18, 2012)).

---

overtime compensation and defendants presented conflicting evidence that plaintiff was owed only $509.06).

[2] *See Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 255 (5th Cir. 2012) (finding bona fide dispute where evidence included union representative's conclusion that "it would be impossible to determine" actual hours worked).

[3] *See Lopez v. S. Arch, LLC*, No. 15-6302, 2016 WL 3617671, at *5 (E.D. La. July 6, 2016) (finding no bona fide dispute where parties only offered as evidence the settlement agreement containing "broad, boilerplate language stating that plaintiff released all claims [and] acknowledged that 'he is entitled to receive no other payments, benefits, or compensation' from Defendants besides his $500 settlement").

The Fifth Circuit directs courts to consider six factors in evaluating proposed settlement agreements in class actions: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members. *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). "While these six factors are more applicable to a collective action under FLSA than an action involving a single plaintiff, the Court will use them to guide its analysis to the extent feasible." *Rosa v. Gulfcoast Wireless, Inc.*, Civ. No. 18-4577, 2018 WL 6326445, at *2 (E.D. La. Dec. 3, 2018).

### b. Bona Fide Dispute

Plaintiffs allege the following in their complaint: Garcia worked for Lone Star from August 2015 to January 2017 as a tow truck driver/operator. Gilmore worked for Lone Star from 2013 to December 2016 as a dispatcher/operations manager. Lone Star paid Plaintiffs either by an hourly rate and/or percentage commission for each tow or recovery made. Specifically, Garcia was paid $13.00 per hour from 8:00 a.m. to 5:00 p.m., plus a 30% commission on each tow or recovery made after 5:00 p.m., but was not given overtime compensation for hours worked over 40 hours each workweek. Gilmore was paid $10.00 per hour but was not given overtime compensation for hours worked over 40 hours each workweek. Plaintiffs often worked more than 90 hours per week. Dkt. No. 1 at 5–6. Defendants deny all allegations and liability. Dkt. No. 12.

After review, the Court finds the existence of a bona fide dispute as to the hours worked and overtime compensation owed. Plaintiffs allege that they deserve overtime pay for hours worked beyond the 40-hour workweek, while Defendants assert that Plaintiffs "were not employed by Lone Star Wrecker during some or all of the time periods alleged." Dkt. No. 16 at 4. The Court therefore concludes that

the parties' disagreement over the hours worked and overtime pay owed sufficiently amounts to a bona fide dispute.

### c. Fair and Reasonable Compromise

As stated above, the Court examines the following six factors to determine whether a settlement is "fair and reasonable": (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members. *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). The Court reviews each factor in turn:

1. The parties were represented by counsel and reached their proposed settlement through arm's length negotiations. Accordingly, there is no concern of fraud or collusion behind the settlement. *See Batchedler v. Kerr-McGee Corp.*, 246 F. Supp. 2d 525, 526 (N.D. Miss. 2003).

2. The parties expressed their intent to serve interrogatories and take various depositions prior to the close of discovery, in addition to trying this case, which would require additional time and expenses. *See* Dkt. No. 13 at 3–4. A lengthy trial would consume court resources, expand parties' costs, and delay any eventual recovery. *See Quintanilla v. A&R Demolition, Inc.*, No. H-04-1965, 2008 WL 9410399, at *4 (S.D. Tex. May 7, 2008). Further, because one or more Defendants could have potentially filed for bankruptcy during litigation, the entry of a stay would have necessarily postponed resolution of this matter. Dkt. No. 24 at 4.

3. The parties exchanged initial disclosures and engaged in arm's length negotiations. Dkt. No. 24 at 5. The discovery and negotiations that took place before reaching settlement enabled counsel for the parties to carefully assess the legal and factual merits of the case. *Quintanilla*, 2008 WL 9410399, at *4.

4. The parties disagreed whether Plaintiffs could satisfy their burden of proving the number of overtime hours worked. Dkt. No. 24 at 5. It is therefore possible that Plaintiffs would not have prevailed on the merits.

5. The settlement will pay Plaintiffs a fair recovery for unpaid overtime wages. Defendants assert that Plaintiffs are entitled to no recovery. Meanwhile, Garcia contends that he was owed $2,000.00 but will receive $1,000.00 as the settlement award. Gilmore contends that he was owed $10,000.00 in unpaid overtime compensation but will receive $4,000.000 as the settlement award. Dkt. No. 24 at 5–6. The Court also takes into account "the risks inherent in this litigation, as well as the costs of litigation" in determining whether the settlement amount is fair and reasonable. *Quintanilla*, 2008 WL 9410399, at *5. Further, proposed settlements that amount only to a fraction of the potential recovery do not indicate that the settlement is not fair and reasonable. *City of Detroit v.* Grinnell Corp., 495 F.2d 448, 455 (2d Cir. 1974).

6. The settlement is the product of arm's length negotiations after investigation and legal analysis by the parties' counsel. Dkt. No. 24 at 6. The parties entered into the settlement agreement voluntarily and knowingly. Dkt. No. 25 at 1. The terms of the settlement have been approved by Plaintiffs, Defendants, and their respective counsel. *Id.* Endorsement of a proposed FLSA agreement by counsel for both parties is a "factor that weighs in favor of approval." *Quintanilla*, 2008 WL 9410399, at *5.

After review, the Court concludes that the proposed settlement agreement is a fair and reasonable compromise of Plaintiffs' bona fide FLSA dispute.

## IV.   Attorney's Fees and Costs
### a.  Legal Standard
#### i.  Attorney's Fees

Under the FLSA, courts "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Courts use the lodestar method to assess

attorney's fees in FLSA suits. *See Saizan v. Delta Concrete Prods., Co.*, 448 F.3d 795, 799 (5th Cir. 2006). "In calculating a lodestar, the number of hours reasonably expended are multiplied by an appropriate hourly rate in the community for such work." *Villegas v. Regions Bank*, No. H-11-904, 2013 WL 76719, at *2 (S.D. Tex. Jan. 4, 2013) (citing *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003)).

The party seeking reimbursement of attorney's fees "bears the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence." *Ranger v. Gonzalez Mascorro*, 274 F.R.D. 585, 595 (S.D. Tex. 2011) (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993); *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990)). The court should use this time "as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented." *Id.* (citing *Watkins*, 7 F.3d at 457). The hours remaining are those reasonably expended. *Id.* However, the court anticipates that "[c]ounsel exercises billing judgment when it documents hours charged and the hours written off as unproductive, excessive, or redundant." *Martinez v. Refinery Terminal Fire Co.*, No. 2:11-CV-295, 2016 WL 4594945, at *2 (S.D. Tex. Sept. 2, 2016).

A reasonable hourly rate should be determined based on "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Rangel*, 274 F.R.D. at 596 (quoting *Normam v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)) (internal quotation marks omitted). The relevant legal community is the community in which the court sits. *Id.* (citing *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002)). "The movant bears the burden of producing satisfactory evidence that the requested rate is aligned with prevailing market rates in the community." *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). Proper evidence of a reasonable hourly rate "includes an attorney's own affidavit presenting information as to the rates actually billed and paid in similar lawsuits." *Id.* (citations omitted). Generally, however, the reasonable hourly rate for a community is established "through affidavits of other attorneys practicing there."

*Id.* (citing *Tollett*, 285 F.3d at 368). Such affidavits "should contain direct or opinion evidence as to what local attorneys would charge under similar circumstances." *Id.* (citation omitted).

"After calculating the lodestar, the court may either (1) accept the lodestar figure or (2) decrease or enhance it based on the circumstances of the case, taking into account what are referred to as the *Johnson* factors."[4] *Williams v. Best Temp. Servs., LLC*, No. 3:14-CV-484-D, 2015 WL 12763509, at *3 (N.D. Tex. Aug. 18, 2015) (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324, 329 (5th Cir. 1995)). "Because the lodestar is presumed reasonable, it should be modified only in exceptional cases." *Id.* (citing *Watkins*, 7 F.3d at 457).

### ii. Costs

"Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d). In addition, pursuant to the FLSA, a court "shall allow . . . costs of the action." 29 U.S.C. § 216. Taxable costs include: "(1) fees paid to the clerk and marshal; (2) court reporter fees for all or part of a deposition transcript; (3) witness fees and related expenses; (4) printing costs; and (5) fees for copies of papers necessarily obtained for use in the case." *Mauricio v. Philip Galyen, P.C.*, 174 F. Supp. 3d 944, 952 (N.D. Tex. 2016) (citing 28 U.S.C. §§ 1821 & 1920). In the context of FLSA cases, "[c]ourts have generally been reticent to grant costs beyond those items enumerated in 28 U.S.C. § 1920." *Entizne v. Smith Moorevision LLC*, No. 3:13-CV-2997-B, 2014 WL 1612394, at *5 (N.D. Tex. Apr. 22, 2014) (citing *Hernandez v. Aleman Constr., Inc.*, No. 3:10-CV-2229-BN, 2013 WL 5873289, at *6– *7 (N.D. Tex. Nov. 1, 2013) (rejecting request for costs including process serving,

---

[4] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974).

mediation services, mileage, parking, office supplies, teleconferencing, and FedEx shipping)). Further, "the Fifth Circuit has held that there is no statutory authority in the FLSA to award costs, such as expert witness fees, not enumerated in 28 U.S.C. § 1920." *Novick v. Shipcom Wireless, Inc.*, No. 4:16-CV-730, 2018 WL 6079348, at *4 (S.D. Tex. Nov. 21, 2018) (citing *Tyler v. Union Oil Co. of Ca.*, 304 F.3d 379, 404–05 (5th Cir. 2002)) (listing cases); *see also Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1045 (5th Cir. 2010) (emphasizing "the Supreme Court has indicated that federal courts may only award those costs articulated in section 1920 absent explicit statutory or contractual authorization to the contrary").

### b. Legal Analysis

The first step in computing the lodestar is determining the reasonable hourly rate. *Villegas*, 2013 WL 76719, at *3. Plaintiffs seek the following hourly rates: (1) $400 for Clif Alexander ("Alexander"); (2) $350 for Lauren Braddy; (3) $300 for Carter Hastings; and (4) $350 for George Schimmel. Dkt. No. 27 at 7. In support of the motion, Alexander submits an affidavit attesting to the experience of each attorney and thus the reasonableness of their requested hourly rates. *See* Dkt. No. 27-1, Ex. A, Declaration of Clif Alexander. Given each attorney's experience and relevant caselaw, the Court determines that the proposed hourly rates are reasonable for each attorney. *See, e.g., Cantu v. Hinojosa*, No. 2:16-CV-287 (S.D. Tex.) (Tagle, J.).

The second step in the lodestar calculation of attorney's fees is determining the number of hours that were reasonably expended on the litigation. *Villegas*, 2013 WL 76719, at *3. Plaintiffs represent that 20.8 hours were expended on the case, so counsel would be entitled to $7,520.00 in attorney's fees. Dkt. No. 27 at 7. Plaintiffs also seek $1,545.50 in costs to cover filing fees, service, legal research, and PACER. *Id.* at 9. Further, Alexander provides a summary of the hours expended on tasks throughout the litigation. *See* Dkt. No. 27-1. In exercising billing judgment, Plaintiffs' counsel has agreed to a significant reduction in attorney's fees for settlement purposes and therefore seeks a total of $2,000.00 in attorney's fees and

costs. *Id*. The Court concludes that under these circumstances, it is appropriate to award $2,000.00 in attorney's fees and costs—$1,600.00 in attorney's fees and $400.00 in costs.[5]

### V.    Motion to File Settlement Agreement Under Seal
#### a.  Legal Standard

"In the FLSA context, there is a strong presumption in favor of keeping settlement agreements in FLSA wage-settlement cases unsealed and available for public review. The public's interest in accessing the settlement agreement, including the settlement amount, often outweighs any interest in confidentiality." *Rodriguez v. El Pollo Regio, Inc.*, No. 3:11-cv-2276-D, 2012 WL 5506130, at *1 (N.D. Tex. Feb. 23, 2012) (quoting *Prater v. Commerce Equities Mgmt. Co.*, 2008 WL 5140045, at *9 (S.D. Tex. Dec. 8, 2008)) (internal quotation marks omitted). "[T]he overwhelming consensus of district courts that have considered the issue [] hold that an FLSA settlement cannot be sealed absent some showing that overcomes the presumption of public access." *Joo v. Kitchen Table, Inc.*, 763 F. Supp. 2d 643, 647 (S.D.N.Y. 2011). "Sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair. Absent an extraordinary reason, the court cannot seal such records." *Tran v. Thai*, No. H-08-3650, 2009 WL 2477653, at *1 (S.D. Tex. Aug. 12, 2009).

In *Joo*, the United States District Court for the Southern District of New York found that the parties' reliance on case law generally indicating the "strong judicial policy in favor of settlements" was unavailing in the FLSA context. *Joo*, 763 F. Supp. 2d at 647 (citation and internal quotation marks omitted). Indeed, in *Tran*, the United States District Court for the Southern District of Texas concluded: "Settlement agreements that must be approved by the court are presumptively

---

[5] Plaintiffs may only recover $400 in filing fees because all other costs are not provided for in 28 U.S.C. § 1821 or § 1920, and the FLSA does not explicitly authorize recovery of costs beyond those enumerated in § 1920. *See, e.g.*, *Hernandez*, 2013 WL 5873289, at *6–*7 (rejecting request for costs including private process serving, mediation services, mileage, parking, office supplies, teleconferencing, and FedEx shipping).

public once that are brought to the court. It is immaterial that sealing of the settlement agreement is part of a negotiated settlement between the parties." *Tran*, 2009 WL 2477653, at *1 (citation omitted).

### b. Legal Analysis

Sealing the settlement agreement is unwarranted here and would thwart the public's independent interest in assuring that employees' wages are fair. *See Tran*, 2009 WL 2477653, at *1. Although the parties assert that "[t]he settlement is the product of arm's length negotiations of disputed claims that would not have been resolved without the understanding that Plaintiff[s] would maintain the settlement terms in confidence," Dkt. No. 21 at 1, it is "immaterial that sealing of the settlement agreement is part of a negotiated settlement between the parties" in the FLSA context. *Tran*, 2009 WL 2477653, at *1 (citation omitted).

Further, though the parties allege that sealing the settlement agreement will prevent public exposure of their financial information, the parties fail to specify what "personal financial information" they wish to keep private. Dkt. No. 21 at 2. The only financial information contained in the settlement agreement is the settlement amount for the Plaintiffs. "[A] preference not to disclose to the public the settlement amount—a feature of every monetary settlement—is hardly an extraordinary reason to justify sealing the settlement agreement here." *Johnson v. Bodi Servs., LLC*, No. 5:17-cv-123, 2018 WL 3198437, at *2 (S.D. Tex. June 29, 2018). The Court concludes that the parties do not posit any extraordinary reason for the Court to seal the agreement.

## VI.   Conclusion

For the reasons above, the Court **DENIES** the Joint Motion to Seal Settlement Agreement, Dkt. No. 21, and **GRANTS** the Joint Motion for Approval of Settlement Agreement and Dismissal with Prejudice, Dkt. No. 24.

The Court **DIRECTS** the Clerk to close the case.

SIGNED this 24th day of February, 2020.

_____
Hilda Tagle
Senior United States District Judge